Scott, J.
The defendant in error filed his petition in the court of common pleas of Lucas county, in January, 1856, against Blanchard, the treasurer of said county, the city of' Toledo, and its hoard of education, seeking to enjoin the collection of certain taxes, which had been levied on certain town lots and lands owned by him, and lying in a bend, on the southeasterly side of the Maumee river, and forming part of certain territory which the commissioners of Lucas county had, in June, 1854, upon petition of the city council of the city of Toledo, ordered to be annexed to said city. The defendants having filed their joint answer, the cause was heard by the court, at the same term, and the collection of the city and school taxes was perpetually enjoined. This petition in error seeks to reverse that judgment.
The record in this case is voluminous, and it may be suffi cient to state, as we proceed in its examination, such prominent facts as will present the points arising in the case.
The taxes, the collection of which was enjoined by the’ court of common pleas, were levied by the council of the city of Toledo in June, 1855, for city and school purposes, to-wit; for general and incidental expenses of the city; for the fire department; for sinking fund ; for interest on city debt; for maintenance and support of schools in the city; and for erecting a school house, and defraying the expenses, in part, of the same in the annexed territory, lying south of the Maumee river (commonly called the Yondota division), including the property of the plaintiff below.
This territory was annexed under the authority, and pursuant to the provisions of the 14th section of the act of May 3, 1852, providing for the organization of cities and incorpo *98 rated villages. (Swan & Critchfield’s Stat. 1497). That sec tion is as follows :
Sec.- (14). “When any municipal corporation shall desire to annex any contiguous territory thereto, not embraced within the limits of any city or incorporated village, it shall be lawful for the trustees or council of the corporation proposing such annexation, to submit the question to the qualified electors of the corporation, by an ordinance passed for that purpose, at least one month before some general election in April or October; if a majority of the qualified voters of the corporation voting on the question, shall vote in favor of such annexation, the said corporation shall present to the county commissioners of the proper county, a petition praying for such annexation, which petition shall describe the territory proposed to be annexed to such municipal corporation, and have attached thereto an accurate map or plat thereof; and like proceedings shall be had upon said petition as are provided in the third, fourth, fifth, sixth and seventh sections of this act, so far as the same may be applicable; and if, within two months after a transcript shall be delivered as above provided, no notice of a complaint against such annexation shall be given according to the provisions of this act, then, at the end of said two months, and in case of any such complaint, then, at the end of said two months and after the ■dismission of said complaint, the said contiguous territory proposed to be annexed, shall be in law deemed and taken to be included in, and shall be a part of said municipal corporation, and the inhabitants thereof shall, in all respects, be citizens thereafter of the said municipal corporation.”
It is claimed by Bissell, the plaintiff below, that the order of the commissioners of Lucas county for the annexation of the territory embracing his property, was void, for sundry reasons:
1. Because the territory annexed was not in fact contiguous to the city of Toledo, as bounded prior to the annexation. The facts shown by the record, and bearing on this question, are—
That the center of the Maumee river formed the south *99 eastern boundary of the city of Toledo. That .the annexed territory (consisting of an unincorporated village called Yondota), is situated on the southeastern side of the river, in a bend running up near to the heart of the city, and that all of it is nearer to the center of business and valuable property than many other portions of the original city territory. That the river is navigable, and where it formed said original boundary, is of unequal width, but for half a mile or more, does not exceed one fourth of a mile in width, and has been permanently bridged for railroad purposes, and may be bridged for other purposes. That Yondota depended mainly upon the influence of business and improvements in Toledo, for its growth and importance.
The transcript of the annexation proceedings, and the accompanying map, show that the annexation consists in an extension of the original boundaries, so as to include the Avhole of the river and a considerable tract of land on its southeast side. There is no territory intervening between that which was annexed and the original city limits. All the parts of the annexed territory are in immediate contact with each other; and the whole is in direct contact for several miles with the original boundary. Contiguity can not import more than immediate contact; and we think the objection founded on a want of contiguity is not well taken.
The plaintiff below objects to the validity of the annexation, because the consent of the persons residing on the annexed territory was not given to the measure, but the annexation was ordered against the remonstrance of a majority of them. But the statute requires no such assent. It empowers the county commissioners to order the annexation of contiguous territory to a city or incorporated Village upon the petition of the corporation; as provided in section 14, or upon the petition of the inhabitants of such contiguous territory, as provided in sections 9, 10, 11 and 12 (Swan & Critchfield’s Stat. 1495, 1496). The statute regards the municipal corporation, on the one hand, and the inhabitants of the territory proposed to be annexed, on the other, as adversary parties. It constitutes the board of county commissioners a tribunal *100 to determine the question. Each has a full opportunity to-be heard. The commissioners may refuse to order the annexation, if they deem it unreasonable or improper, though all the parties assent to the measure; and, if they consider it reasonable and proper, they may order it upon the petición of the corporation, without the consent and against the will of any other party. The clear terms of the statute leave no room for doubt that such was the intention of the legislature.
But counsel for defendant in error claim that if the statute is to be so construed, it is unconstitutional, and that no one-can be made a member of a corporation without his consent This may be true of corporations of a private and purely vol untary character, which are unconnected with the civil government of the country. But the principle is not applicable to municipal corporations, which are an important agency of civil government in the preservation of order, the enforcement of laws, and the promotion of the common interests of the whole community within their limits.
But we do not propose to discuss this question. The constitutionality of this 14th section was affirmed by this court, in the case of Powers v. Commissioners of Wood County, 8 Ohio St. Rep. 285, and we are entirely satisfied with that decision. It has the sanction of many kindred decisions in other states. Cheany v. Hosea, 9 B. Monroe, 330; Gorham v. Springfield, 21 Maine Rep. 59.
It was further objected by the plaintiff below, that the city of Toledo was largely indebted at the time of annexation, and that, without his consent, his lands and lots could not be annexed and be thereby subjected to taxation to discharge that indebtedness. This question was also made and considered in the case of Powers v. Commissioners of Wood County. And we are satisfied with the decision that such fact does no't, necessarily, prevent or invalidate an order of annexation, though it may very properly be considered by the county commissioners in determining the propriety of annexation.
It was further objected, by the same party, that the ordinance which was passed by the city council in February, *101 1853, submitting the-question of annexation to the vote of the electors of the city of Toledo, was never signed by the presiding officer of the council. But if, as the plaintiff below avers in his petition, this ordinance was, in fact, regularly passed by the council and recorded among their proceedings by the proper officer, we would be unwilling to hold that the omission of the presiding officer to attach to it his signature, would render the election held pursuant to its ' provisions wholly void.' Its vitality depends, as we think, upon the fací -that it was regularly passed by the council, and this fact may be shown by the record. But be this as it may, the objection ■should have been taken, if at all, upon the hearing in the proceedings for annexation. The commissioners of the county acquired jurisdiction in the case, under the provisions of the statute, when a petition, containing the necessary averments and prayer, was presented to them by the corporation, and the notice required by statute had been given, to bring in all parties interested. They had then power to hear and determine the case. They might inquire into the regularity of the preliminary proceedings; it was their duty to hear the objections of any party interested, and if the city was indebted (as in this case in the amount of $125,000), and the territory ■proposed to be annexed would not be proportionably benefited by the subject rnattér of the indebtedness; if tbe persons residing on the contiguous territory proposed to be annexed, would be precluded by the intervention of a navigable stream, or otherwise, from a fair and equal participation with the residents in the original corporation, in the benefits of gas light, schools, or other advantages afforded by the city organization and improvements; all these were proper subjects of consideration by the county commissioners. And it was equally proper for them to consider whether the owners of the territory proposed to be annexed, and who opposed the annexation, were unreasonably desiring to avail themselves of all the city improvements and advantages which gave value to their property, at the sole expense of others. The statute having given them power to hear and determine' all these questions, and all persons interested being brought before *102 them by publication, their final order in the, case, though it may be erroneous, is not void. The facts may be such as would justify a reviewing court in setting it aside, but cob laterally it can not be impeached or treated as a nullity. And full opportunity for a review is given by the statute, which provides that the order of annexation shall not take effect for two months after it is made; within which time any person in teres'ted, or the prosecuting attorney of the county, may file a complaint, in the nature of an application for an injunction, in the court of common pleas of the county, or with a judge in vacation, by whom the whole matter may be again summarily and fully heard. If complaint be made within two months, then the order remains inoperative, till the complaint be heard and dismissed. In this case, no such complaint was made; no review was asked; and the order of annexation, after two months from its date, became conclusive and binding upon all parties interested, unless it be shown to be absolutely void, for want of jurisdiction. The policy of the statute in limiting a review of the order of annexation to the short period of two months, must be readily perceived, from the nature of the ease. No appropriation of the corporation funds for necessary improvements in the annexed territory could properly be made, nor could such improvements be ordered, until the annexation would become a fixed and ascertained fact. And the interest of all parties would require this fact to be ascertained without unnecessary delay.
And this we think is a full answer to the further objection of the plaintiff below, that the order of annexation was unreasonable and improper, by reason of the location of the annexed territory, and the impossibility of its inhabitants sharing equally with those within the original city limits, in the various advantages afforded by the city organization. These were not questions of jurisdiction, but addressed themselves to the judgment of the commissioners, and might have been reviewed, if any party interested had been unwilling to acquiesce in their decision.
But it is further objected by the petition of the plaintiff below, that the ordinance of the city council for the levying *103 of the taxes sought to be enjoined was not signed by the presiding officer of the council. We are strongly inclined to think that the signature of the presiding officer was not essential to the validity of an ordinance of this kind. It is admitted to have been regularly passed, by the proper body, and to have been duly recorded by the proper officer. And though it be true, that the statute directs him to authenticate all ordinances by his signature, it does not follow that his signature is essential to their validity. Beside, we are not aware of any provision in the statute which requives a town council to levy taxes solely by ordinance. Such an act, by whatever name it may be called, is properly in the nature of a resolution. It is of a temporary character, and prescribes no permanent rule of government. And though clothed in the forms of an ordinance, it may well have the effect of a resolution without the signature of the presiding officer.
A still further objection is raised by the petition of the plaintiff below to that portion of the taxes upon his property which were levied for school and school house purposes.
The city of Toledo was incorporated in 1837. On the 9th of March, 1849, “ an act relating to taxes, schools, and sewers in the city of Toledo,” was passed (O. L. L., vol. 47, p. 207, secs. 8 to 13), amending the city charter and extending the “ Akron school law ” with its amendments, to Toledo, subject to certain restrictions and amendments. Under the “ Akron school law,” so amended, the board of education of Toledo was organized, and has since continued to act. Under the towns and cities act of May 3, 1852, Toledo became a city of the second class; and it is claimed that the effect of the last named act was the repeal not only of the city charter, with its amendatory acts, but also of that part of the act of 1849 which extended the Akron school law to Toledo; and that its board of education was thereby dissolved, and its local school system terminated. But we are satisfied it was not the intention of the legislature, by any of the provisions of the towns and cities act of 1852, to interfere with the school systems then existing in the cities and towns of the State That act does not expressly repeal any part of the *104 school laws, and the legislature, in subsequently passing the general school law of March 14, 1853, expressly provided, in its 67th section, that it should not be so construed as to repeal, change or modify in any respect the provisions of the Akron school law, or any other special acts in relation to schools. (Swan & Critchfield’s Stat. 1365.)
The legislature manifestly intended all special and local school laws to be left untouched, both by the towns and cities act of 1852, and by the general school law of 1853.
We believe this completes the list of objections taken by the plaintiff below, in his petition, to the order of annexation, and the levying of the taxes, the collection of which he seeks to have enjoined, and are unable to find any sufficient ground to justify the order of the court of common pleas.
The judgment of the court of common pleas must be reversed, the injunction heretofore granted in the cause be dissolved, and the petition of the plaintiff below dismissed.
Brinkerhoee, O. J., and Sutliee, Peck, and Gholson, JJ., concurred.